UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ashley Brickhouse )<br>11411 Lake Arbor Way, Apt#909 )<br>Mitchellville, MD 20721 )<br>   )<br>   Plaintiff, )<br>v. )<br>   )<br>HOWARD UNIVERSITY )<br>2400 6th St NW )<br>Washington, DC 20059 )<br>   )<br>   Defendant. )<br>   )<br>_____ ) | Civil Action No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Ashley Brickhouse ("Plaintiff"), by and through her undersigned counsel, brings this action to redress deprivation and interference of rights secured by the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* (the "ADA"), specifically, Title III of the ADA, Section 504 of the Rehabilitation Act, and the D.C. Human Rights Act (the "DCHRA"), D.C. Code § 32-501 *et seq.*

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over Plaintiff's federal claims pursuant to, among other provisions of law, 28 U.S.C. §§ 1331 and 42 U.S.C. §§ 2000e and 12101, *et seq.*, for claims arising under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to, 28 U.S.C. § 1367 and D.C. Code § 11-921(a).

2. Venue is proper in this Court because the unlawful conduct, and the majority of the events that underlie this action, took place in the District of Columbia, while Plaintiff attended Howard University, located, and operated by Defendant in the District of Columbia.

## PARTIES

3. Ashley Brickhouse, ("Plaintiff"), is an adult female individual residing at the above-captioned address. At all relevant times, Plaintiff was a student of the Howard University College of Dentistry within the meaning of the ADA, DCHRA, and any other relevant civil rights laws. At all times relevant hereto, Plaintiff suffered from post-traumatic stress disorder ("PTSD"), an impairment that substantially limits several of Plaintiff's major life activities including learning, reading, concentrating and thinking, as well as the major bodily functions of the brain and neurological function, as defined by the ADA and the 2008 amendments thereto. Plaintiff has a record of her disability and impairments and Plaintiff has been treated by, and continues to be treated by, medical providers for her condition.

4. Howard University, ("Defendant"), is a private educational institution located at the above-captioned address. At all relevant times, Defendant receives and/or received federal funding and financial assistance within the meaning of 20 U.S.C. Chapter 28, Subchapter IV, and is otherwise subject to the ADA and Section 504, which prohibits discrimination against individuals with disabilities and ensures that every student with a disability has equal access to an education. Section 504 states that disabled students are entitled to receive accommodations and modifications to ensure that all students have the opportunity to learn.

## FACTS

5. In August 2013, Ashley Brickhouse, ("Plaintiff"), enrolled in the dental program of the Howard University College of Dentistry ("HUCD").

6. Plaintiff was involved in multiple student associations at the HUCD, including, the American Student Dental Association ("ASDA"), The American Association of Women

Dentist ("AAWD"), and the Hispanic Dental Society ("HDS").

7. In May 2014, while enrolled in the Howard University College of Dentistry, Plaintiff was raped.

8. During Plaintiff's first year of enrollment in the Howard University College of Dentistry, she navigated through several academic challenges as a result of personal obstacles, including assisting a friend who had become homeless, as well as the death of a family member.

9. In May 2014, Plaintiff was dismissed from the Howard University College of Dentistry.

10. On or about May 8, 2014, Plaintiff submitted her request to appeal her dismissal. The subsequent results of the appeal hearing allowed her to resume her studies at the Howard University College of Dentistry, completing her Fall 2014 and Spring 2015 semesters with a 3.71 GPA and 3.63 GPA, respectively.

11. Plaintiff continued to matriculate in the Howard University College of Dentistry program, however, during Plaintiff's second year of studies (2015-2016), she again faced academic and personal challenges due to the hospitalization of her mother who had suffered a stroke and post-traumatic stress disorder due to the rape.

12. Plaintiff attempted to proactively address her academic standing with University faculty, against the backdrop of her disability, however, was met with resistance. Dr. Martha Davila-Garcia, professor of a prerequisite course had posted a sign on her office door, "No Dental Students Allowed", effectively curtailing Plaintiff's ability to engage in the interactive process and discuss the availability of reasonable accommodations to address Plaintiff's disability.

13. In the Fall of 2016, Plaintiff's fellow classmate confided in her that she too had suffered a

rape. This revelation triggered Plaintiff to suffer flashbacks of her own rape, in turn causing Plaintiff to suffer, night sweats, insomnia, depression, difficulty concentrating and learning, consistent with post-traumatic stress disorder.

14. Plaintiff has a documented disability of post-traumatic stress disorder as a result of the rape she suffered in May 2014.

15. On May 8, 2017, Plaintiff met with Dr. Cheryl Fryer, Associate Dean of Academic Affairs of Howard University College of Dentistry, to discuss her academic standing.

16. Plaintiff engaged in the interactive process when she expressed to Dr. Fryer that the cause of her deteriorating academic status was due to the ongoing detrimental impact the rape assault had on her ability to learn, read and concentrate on her coursework, consistent with post-traumatic stress disorder.

17. On May 8, 2017, in response to Plaintiff's disclosure of her rape, and further engaging in the interactive process, Dr. Fryer instructed Plaintiff to seek out the assistance of the Howard University Counseling Center ("HUC").

18. Upon information and belief, the Howard University Counseling Center provides services to students such as outreach, individual psychotherapy, and counseling through the DC Rape Crisis Center.

19. On or about May 8, 2017, Plaintiff also met with Dr. Crystal McIntosh, HUCD Executive Committee Chair, regarding the status of her academic standing.

20. Dr. McIntosh queried Plaintiff regarding the reason for her academic standing at that time, expressing surprise that Plaintiff's academic standing was in jeopardy again.

21. Plaintiff disclosed her rape to Dr. McIntosh, and explained that she was suffering from symptoms of post-traumatic stress disorder resulting from the rape. Plaintiff expressed

that the rape had impacted her ability to learn, read and concentrate on her coursework, consistent with post-traumatic stress disorder. Plaintiff's meeting with Dr. McIntosh further evidenced her attempt to engage in the interactive process with University faculty.

22. On or about May 11, 2017, Plaintiff, along with a classmate, requested the intervention of Dr. Fryer in order to address the failure of Dr. Langston Smith, Professor of Advanced Topics in Endodontics and Department Chair, to respond to repeated requests to address questions regarding exam results.

23. On or about May 11, 2017, Plaintiff again met with Dr. Fryer to discuss the status of her academic standing. Plaintiff again expressed her difficulty in managing her coursework due to the underlying impact of the rape she previously suffered, to which Dr. Fryer stated, "it [rape] was 3 years ago, you should be over it."

24. On May 12, 2017, Defendant issued Plaintiff a letter of dismissal, terminating Plaintiff from the dental program at the Howard University College of Dentistry.

25. On or about May 19, 2017, Plaintiff submitted a letter of appeal to Dean Dexter Woods, regarding Defendant's decision to dismiss her from the dental program at Howard University College of Dentistry.

26. On or about May 26, 2017, Plaintiff appeared at an appeal meeting before the Executive Committee. Plaintiff's appeal was denied.

27. On or about June 6, 2017, Plaintiff met with Dr. Donna Grant-Mills, Associate Dean of Student Affairs HUCD.

28. Plaintiff disclosed her rape to Dr. Grant-Mills, and explained that she was suffering from symptoms of post-traumatic stress disorder resulting from the rape. Plaintiff expressed that the rape had impacted her ability to learn, read and concentrate on her coursework,

consistent with post-traumatic stress disorder. Dr. Grant-Mills advised Plaintiff to submit a letter to the Office of the Provost and to contact Dean Elaine Heath, Dean of Student Services. Plaintiff's meeting with Dr. Grant-Mills further evidenced her attempt to engage in the interactive process with University faculty.

29. On or about June 6, 2017, Plaintiff met with Dean Dexter Woods to request that he review the Executive Committee decision.

30. Based on the advice of Dr. McIntosh, Plaintiff shared the information regarding her rape and the post-traumatic stress disorder. Plaintiff expressed that the rape had impacted her ability to learn, read and concentrate on her coursework, consistent with post-traumatic stress disorder. Plaintiff's meeting with Dean Woods further evidenced her attempt to engage in the interactive process with University faculty.

31. At the conclusion of the meeting, Dean Woods agreed to consult with Dr. Fryer, Dr. McIntosh, and Dr. Grant-Mills prior to making his final decision.

32. On or about June 8, 2017, Plaintiff met with Dean Elaine Heath and shared the information regarding her rape and the post-traumatic stress disorder. Plaintiff expressed that the rape had impacted her ability to learn, read and concentrate on her coursework, consistent with post-traumatic stress disorder. Plaintiff's meeting with Dean Heath further evidenced her attempt to engage in the interactive process with University faculty.

33. On or about June 8, 2017, Plaintiff met with Ms. Candi Smiley, Esq., Title IX Coordinator in the office of the Provost. Plaintiff submitted a letter to the office of the Provost requesting reinstatement.

34. Plaintiff disclosed her rape to Ms. Smiley, and explained she was suffering from symptoms of post-traumatic stress disorder resulting from the rape. Plaintiff expressed

that the rape had impacted her ability to learn, read and concentrate on her coursework, consistent with post-traumatic stress disorder. Plaintiff's meeting with Ms. Smiley further evidenced her attempt to engage in the interactive process with University faculty.

35. Ms. Smiley referred Plaintiff to Dr. Akosa McFadgion, Director of Interpersonal Violence Prevention Program.

36. On or about June 8, Plaintiff met with Dr. Akosa McFadgion.

37. Plaintiff disclosed her rape to Dr. McFadgion, and explained she was suffering from symptoms of post-traumatic stress disorder resulting from the rape. Plaintiff expressed that the rape had impacted her ability to learn, read and concentrate on her coursework, consistent with post-traumatic stress disorder. Dr. McFadgion provided Plaintiff with information for the DC Rape Crisis Center (DCRCC). Plaintiff's meeting with Dr. McFadgion further evidenced her attempt to engage in the interactive process with University faculty.

38. On or about August 1, 2017, Plaintiff met with Dean Elaine Heath, Dean of Student Services; Dr. Donna Grant-Mills, Associate Dean of Student Affairs HUCD; Dr. Akosa McFadgion, Director Interpersonal Violence Prevention Program; and Dr. Cheryl Fryer, Associate Dean of Academic Affairs, HUCD.

39. The purpose of the meeting amongst the faculty members was to structure a plan for Plaintiff's readmission to the HUCD program and to further discuss Plaintiff's disability resulting from the rape she had previously suffered.

40. At the conclusion of the meeting with the above-referenced faculty members, and in furtherance of the interactive process, a plan of action was devised that included:

   a. Full time employment at a dental office

    b. Monthly meetings with Dr. McFadgion

    c. Bi-monthly meetings with Dr. Lawrence, student development HUCD

    d. Weekly counseling at DC Rape Crisis Center ("DCRCC")

    e. Weekly counseling at Howard University Counseling Center ("HUC")

41. At the conclusion of the meeting, the faculty in attendance, including Dr. Fryer agreed that after Plaintiff successfully completed the plan of action, Dr. Fryer would serve as liaison for another meeting with Dean Woods to discuss Plaintiff's continuation in the Howard University College of Dentistry.

42. In the Fall of 2017, Plaintiff began fulfilling each requirement of the action plan as created by Defendant. However, upon the conclusion of the action plan, Dr. Fryer refused to assist Plaintiff as agreed.

43. Dr. Grant-Mills intervened on Plaintiff's behalf, making multiple attempts to schedule a meeting with Dean Woods. However, Dean Woods was unresponsive.

44. Dr. Grant-Mills then requested a meeting with Mr. Kenneth Holmes, Vice President of Student Affairs HU, Mr. Calvin Hadley, Ombudsperson HU, Dr. Angela Cole-Dixon, Associate Provost, in attempts to address Plaintiff's fulfillment of the action plan and her readmission.

45. In February 2018, Dr. Grant-Mills met with Dean Woods who then requested that Plaintiff provide him with an update as to her progress on the action plan devised during the faculty meeting of August 1, 2017.

46. Over the subsequent months, Plaintiff provided updates and documentation of her progress as requested by Dean Woods. During Plaintiff's full-time employment at a dental office she worked with Dr. Bridgette Rhodes, Assistant Professor HUCD.

47. On or about June 2018, Dr. Andrea Jackson, assumed the role as Interim Dean of the Howard University College of Dentistry.

48. Prior to Dr. Jackson's assumption of the role as Interim Dean, Dr. Grant-Mills requested a meeting with Dean Woods to apprise him of Plaintiff's progress.

49. On or about June 2018, Dr. Bridgette Rhodes, Assistant Professor HUCD, met with Dr. Jackson on Plaintiff's behalf, to address Plaintiff's academic standing and recommend Plaintiff's readmission to HUCD. At the conclusion of the meeting, Dr. Jackson advised Dr. Rhodes to write the Provost on Plaintiff's behalf and advised Dr. Rhodes to inform Plaintiff to also write to the Provost, Dr. Anthony Wutoh, as soon as possible to further discuss Plaintiff's readmission.

50. On August 20, 2018, after months of correspondence between Plaintiff, Dr. Rhodes, Provost Wutoh, and Interim Dean Jackson, a meeting was convened among faculty members to discuss Plaintiff's readmission to HUCD.

51. On August 20, 2018, the meeting included Plaintiff, Ashley Brickhouse, Dr. Andrea Jackson, Interim Dean HUCD, Dr. Donna Grant-Mills, Dr. Akosa McFadgion, Dr. Bridgette Rhodes, Dr. Leslie Lawrence, Department of Student Development HUCD, Dr. Candace Mitchell, HUCD and Dr. Cheryl Fryer, to discuss Plaintiff's progress and once again engage in the interactive process.

52. At the conclusion of the meeting, Defendant requested that Plaintiff submit documentation of her completion of the action plan items.

53. On August 20, 2018, Plaintiff submitted the documentation as requested by Defendant.

54. On or about September 2018, after the completion of more than one year of tasks assigned by Defendant and repeated meetings with Defendant, Defendant denied Plaintiff readmission to HUCD.

55. Accordingly, Plaintiff requests that the Court: (i) declare unlawful Defendant's failure to provide a reasonable accommodation to Plaintiff with a disability under Title III of the ADA, Section 504 of the Rehabilitation Act and the DCHRA; (ii) require Defendant to modify its practices, policies, and procedures to comply with Title III of the ADA, Section 504 of the Rehabilitation Act and the DCHRA; and (iii) enter a judgment for compensatory and punitive damages, as well as costs and attorneys' fees, where appropriate, and such other relief as this Court deems just and proper.

## COUNT I
## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. 12181)
## (Failure to Accommodate and Disability Discrimination)

56. Plaintiff adopts and incorporates all the facts and allegations set forth above as if fully set forth herein.

57. Title III of the Americans with Disabilities Act, provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns … or operates a place of public accommodation." 42 U.S.C. § 12182(a).

58. As noted, Plaintiff had a qualifying disability within the meaning of the ADA and Defendant had notice of that disability prior to Plaintiff's dismissal from the University. As also noted, with (or without) reasonable accommodations, Plaintiff could continue to

perform the essential coursework of the dental program as required. As further noted, Plaintiff requested reasonable accommodations (although she was not legally obliged to do so) to allow her to continue to her coursework.

59. Defendant intentionally discriminated against Plaintiff in violation of Title III of the ADA by, among other things, not making reasonable accommodations to the known physical or mental limitations of Plaintiff.

60. By virtue of Defendant's intentional actions, Plaintiff was dismissed from the Howard University College of Dentistry or otherwise discriminated against with respect to her enrollment at the University and privileges of enrollment on the basis of her disability status in violation of the Title III of the ADA.

**COUNT II**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**
**(Failure to Accommodate and Disability Discrimination)**

61. Plaintiff adopts and incorporates all the facts and allegations set forth above as if fully set forth herein.

62. Section 504 of the Rehabilitation Act provides that, no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . [.]

63. Courts have held that, once a student has sufficiently documented that she (or he) has a qualifying disability, a college (Public Accommodation) is responsible for providing services and reasonable modifications of policy (accommodations) that do not result in

unfair advantage, require significant alteration to its programs or activities, result in the lowering of academic or technical standards, or cause the college to incur undue financial hardship.

64. Further, in accordance with 28 CFR § 36.309, any private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

65. Plaintiff disclosed her disability, post-traumatic stress disorder to multiple faculty members in an attempt to engage in the interactive process, thereby identifying the availability of reasonable accommodations.

66. Faculty members acknowledged Plaintiff's request by advising her to seek out counseling services provided by Defendant.

67. Defendant further acknowledged Plaintiff's disability and requests for help by assembling a team of faculty members to devise an action plan to address Plaintiff's disability and effectively identify proposed reasonable accommodations upon readmission to the Howard University College of Dentistry.

68. Upon completion of the requisite action plan items, devised by Defendant, Defendant discriminated against Plaintiff with respect to her enrollment at the University and/or privileges of enrollment on the basis of her disability status in violation of the Section 504 of the Rehabilitation Act of 1990.

## COUNT III
## VIOLATION OF THE DC HUMAN RIGHTS ACT
## (Failure to Accommodate and Disability Discrimination)

69. Plaintiff adopts and incorporates all the facts and allegations set forth above as if fully set forth herein.

70. As noted, Plaintiff had a qualifying disability within the meaning of the DCHRA and Defendant had notice of that disability. As further noted, Plaintiff requested reasonable accommodations (although she was not legally obliged to do so) to allow her to continue to complete her coursework of the Howard University College of Dentistry.

71. At all times relevant to this action, the District of Columbia Human Rights Act, D.C. Code Ann. §§2-1401.01, et seq. ("DCHRA"), and the guidelines promulgated by the District of Columbia Commission on Human Rights were in full force and effect in the District of Columbia and Plaintiff had a right not to be subjected to discrimination on the basis of her disability by Defendant.

72. The DCHRA makes it an unlawful discriminatory practice to "deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations" "wholly or partially for a discriminatory reason based on the actual or perceived. . . disability. . . of any individual." D.C. Code § 2-1402.31(a)(1).

73. "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate. . . ." D.C. Code § 2-1403.16.

74. Defendant is a "place[s] of public accommodation" within the meaning of the DCHRA, D.C. Code § 2-1401.02(24), and Defendant owns a place of public accommodation within

the meaning of the DCHRA. D.C. Code § 2-1401(20)(A).

75. Defendant intentionally discriminated against Plaintiff in violation of the DCHRA by, among other things, not making reasonable accommodations to the known physical or mental limitations of Plaintiff (an otherwise qualified individual with a disability who was student enrolled in the Howard University College of Dentistry).

76. By virtue of Defendant's intentional actions, Plaintiff was dismissed from the Howard University College of Dentistry or otherwise discriminated against with respect to her enrollment at the University and/or privileges of enrollment on the basis of her disability status in violation of the DCHRA.

77. For its violations of the DCHRA, and in accordance with D.C. Code § 2-1403.16, Defendant is liable to Plaintiff for compensatory damages, punitive damages, costs, and attorneys' fees in amounts to be determined at trial, and all other available relief.

WHEREFORE, Plaintiff demands judgment against Defendant, equitable relief, and damages in an ascertainable sum as follows:

(1) Declare the acts and omissions of Defendant complained of herein to be in violation of Title III of the ADA, Section 504 of the Rehabilitation Act and the DCHRA.

(2) Enter judgment awarding Plaintiff and punitive damages, where appropriate, under Title III of the ADA, Section 504 of the Rehabilitation Act and the DCHRA in an amount appropriate to the proof at trial.

(3) Reinstatement to the Howard University College of Dentistry; if reinstatement is unavailable, Plaintiff seeks compensation for tuition and expenses;

(4)   Enter an Order that Defendant cancel any and all costs for tuition and fees charged by the Defendant for any classes which Plaintiff has/have been required to re-take due to the Defendant's failure and refusal to accommodate Plaintiff's disability;

(5)   Enter an Order that Defendant compensate Plaintiff for the opportunity cost of the income which Plaintiff has been denied due to the additional time to complete the Howard University College of Dentistry Degree due to the failure of the Defendant to accommodate the Plaintiff for her disability;

(6)   Compensatory damages in an amount to be determined at trial;

(7)   Punitive damages in an amount to be determined at trial;

(8)   Attorneys fees; and

(9)   Reasonable costs and expenses associated with this suit.

## JURY DEMAND

Plaintiff respectfully demands a jury trial in this action.

Dated:  May 7, 2020

                                        Respectfully submitted,

                                        */s/*
                                        Theresa Owusu (#974435)
                                        Jason Grant  (#1005856)
                                        THE DGO LAW GROUP, PLLC
                                        1775 Eye Street, NW, Suite 1150
                                        Washington, D.C. 20006
                                        T:  (202) 58-5680
                                        F:  (202) 318-9161
                                        towusu@dgolawgroup.com
                                        jagrant@dgolawgroup.com
                                        *Attorneys for Plaintiff*